**NORTHERN RAILROAD, Plaintiff,**

v.

**UNITED STATES of America,**
**Defendant.**

**Civ. A. No. 61–977.**

United States District Court
D. Massachusetts.

Oct. 1, 1963.

—————◇—————

Neal Holland, Boston, Mass., Bernard J. Long, Washington, D. C., for plaintiff.

W. Arthur Garrity, Jr., U. S. Atty., Max C. Goldberg, Murray Falk, Asst. U. S. Attys., for defendant.

FRANCIS J. W. FORD, District Judge.

This is an action for the recovery of income taxes and interest thereon allegedly illegally assessed and collected. Plaintiff is a railroad corporation organized under the laws of New Hampshire in 1844. Sometime prior to 1889 plaintiff had acquired all of the stock of the Peterborough and Hillsborough Railroad and 4000 of the 4124 outstanding shares of the Concord and Claremont (N.H.) Railroad, two other New Hampshire railroad corporations. The properties of the three corporations formed an integrated and continuous line which was leased to the Boston and Lowell Railroad in 1889. This lease was assigned to the Boston and Maine Railroad in 1890 and since that time the combined line has been operated as a component part of the Boston and Maine Railroad System.[1]

In 1945 the properties and franchises of plaintiff's two subsidiaries were purchased by the Boston and Maine Railroad, which in payment surrendered for cancellation the outstanding first mortgage bonds of the two subsidiaries. The two subsidiaries continued thereafter to exist as corporations without assets or liabilities until they were dissolved in 1949.

For the years 1942 through 1945 plaintiff filed consolidated income tax returns with its two subsidiaries. For the year 1945 as a result of losses sustained on the sale of the properties and franchises of the two subsidiaries, there was allowed on the return for 1945 a consolidated net operating loss of $1,577,908.-

1. In 1881 the New Hampshire legislature authorized a merger of the plaintiff and the Concord and Claremont (N.H.) Railroad. The stockholders of both corporations voted to authorize their directors to agree upon the terms and conditions of such a union. However, in the absence of any proof that further steps were ever taken to effectuate the union, and in the light of the fact that they continued thereafter to act as distinct corporations, filing separate reports with the Interstate Commerce Commission and filing consolidated tax returns as parent and subsidiary, the contention of plaintiff that the two corporations were actually merged must be rejected.

91. Part of this loss was utilized by way of carry-back to offset income shown on the 1943 and 1944 consolidated returns. The remaining portion of this loss was claimed as a carry-over deduction by plaintiff on its corporation income tax return for 1946, which it filed as a separate return in its own name rather than as a consolidated return. This deduction was disallowed and as a result plaintiff on May 24, 1957 paid additional taxes assessed against it for 1946 in the amount of $97,207.33 with interest thereon in the amount of $58,954.24. This payment plaintiff seeks to recover in the present action.

The applicable statutory provision governing carry-over of net operating loss is § 122(b) (2) of the Internal Revenue Act of 1939. Also applicable is § 23.31 (f) of Treasury Regulations 104 (1939 Code), as amended by T.D. 5244, 1943 Cum.Bull. 439, the pertinent portions of which provide:

> "The consolidated net operating loss * * * of an affiliated group for a consolidated return period beginning after December 31, 1941 * * * shall be used in computing the consolidated net operating loss deduction * * * notwithstanding that one or more corporations, members of the group, in the taxable year in which such loss * * * originates, makes separate returns (or join in a consolidated return made by another affiliated group) for a subsequent taxable year * * * but only to the extent that such consolidated net operating loss is not attributable to such corporations; and such portion of such consolidated net operating loss * * * as is attributable to several corporations making separate returns (or joining in a consolidated return made by another affiliated group) for a subsequent taxable year * * * shall be used by such corporations severally as carry-overs * * * in such separate returns, or in such consolidated returns, of the other affiliated group * * * ."

The issue here is whether plaintiff is entitled to carry over to its separate corporate income tax return for 1946 the unused portion of the consolidated net operating loss for 1945 resulting from operating losses incurred in 1945 by its two subsidiaries, which continued in existence in 1946 without doing business and which filed no income tax returns for 1946. Government's position appears to be that plaintiff is not the same taxpayer which incurred the 1945 loss and that in any event such a deduction is not authorized by § 23.31(f) of the regulations.

Technically it may be held that a corporation filing a separate return for 1946 is not the same taxpaying entity as that corporation and its two subsidiaries filing a consolidated return for 1945. Plaintiff's right to its claimed deduction does not, however, depend upon such technical distinctions. The fundamental criterion should be whether the business enterprise which in 1946 seeks to take advantage of this loss is in economic reality the same enterprise which suffered the loss in 1945. F. C. Donovan, Inc. v. United States, 1 Cir., 261 F.2d 470; Newmarket Manufacturing Company v. United States, 1 Cir., 233 F.2d 493, 496, 497. Plaintiff clearly meets this test. Its business in 1946 was clearly a continuation of the same business in which it had been engaged in 1945 and for many years before. The only difference was that, because of the sale of the property of the subsidiaries, the extent of the facilities which it leased in 1946 was less than that of the combined facilities leased in 1945. However, mere reduction in the extent of a taxpayer's operations is not a change in nature of these operations. The loss suffered in 1945 was technically a loss of the subsidiary corporations but in fact the economic burden of the loss fell on the parent corporation and therefore ultimately on its stockholders. Allowance of the deduction claimed by plaintiff would give the tax benefit to those who suffered the loss in the same continuing business enterprise and thus afford the benefit of the carry-

over provisions to those whom, as was pointed out in Newmarket, Congress intended to aid.

Government's position as to § 23.31(f) of the regulations is that since that section does not expressly say that a taxpayer in plaintiff's precise situation is entitled to a carry-over deduction, then the deduction cannot be allowed. It is clear under the language of that section that if plaintiff here had made a consolidated return with its subsidiaries for 1946, even though these subsidiaries were mere corporate shells, the carry-over would have been allowable on the consolidated return. Also, if the subsidiaries had filed separate returns for 1946, only the subsidiaries and not the parent corporation, could have taken the carry-over deduction. Because the section does not expressly say that the parent can claim the carry-over deduction when in a subsequent year the subsidiary is wholly inactive and files no return at all, the Government argues that no carry-over deduction can be allowed to anyone. The regulation does not, however, say that the carry-over deduction is allowable in a subsequent year only when the corporation to which it is attributable joins in a consolidated return for the subsequent year. Instead, it states the general rule that the consolidated net operating loss can be carried over and then provides one exception, namely, where the corporation to which the loss is attributable makes a separate return or joins in a consolidated return with another group. Plaintiff does not fall within this exception and hence under the general rule set forth in the regulation it is entitled to the carry-over deduction. Joseph Weidenhoff, Inc., 32 T. C. 1222. Nor can it be held, as Government seems to contend, that the carry-over provision is available only when the returns for the year in which the loss occurred and that for which the carry-over deduction was claimed were both consolidated returns. In F. C. Donovan, Inc., supra, parent and subsidiary filed a consolidated return for

1945. The subsidiary was dissolved in 1947. The parent corporation was allowed to carry back a loss it suffered in 1947, for which year it filed a separate return, to offset income of the subsidiary shown on the 1945 consolidated return. Here the situation is reversed in that parent seeks to carry over the loss of the subsidiary shown in an earlier year to offset income shown on its separate return for a later year. There seems to be no distinction in principle, however, between the two situations, and plaintiff should not be denied the right to carry over this loss simply because its return for the later year involved was not a consolidated one.

Judgment will be entered for plaintiff in accordance herewith.